Vivian C. **RIGUAL–QUINTANA,**
et als.  **Plaintiffs**

v.

**UNITED PARCEL SERVICE CO., et als.  Defendants**

No.  CIV.  00–2338(GG).

United States District Court,
D. Puerto Rico.

March 6, 2002.

Alvaro R. Calderon, Jr., San Juan, PR, for Plaintiffs.

Pinto–Lugo, Oliveras & Ortiz, Jeannette Lopez de Victoria, San Juan, PR, for Defendant.

### OPINION AND ORDER

GIERBOLINI, Senior District Judge.

Pending before us is the defendant's Motion for Summary Judgment arguing

that it is not liable for the damages suffered by the plaintiff's father, decedent Néstor Rigual Camacho. (Docket entry # 14). The plaintiffs opposed the motion and the defendants replied. (Docket entry # 22 & 27).

## BACKGROUND

This is a slip and fall tort action brought to this court pursuant to the diversity of citizenship statute wherein plaintiffs, the children of decedent Nestor Rigual, claim that their father died as a result of injuries sustained in an accident that occurred on the stairs giving public access to the building where defendant United Parcel Service, Co.'s (UPS) has its offices. On April 13, 2000, the decedent went to said offices to pick up a package that he had received. He fell while descending the stairs leading to the building where the UPS' offices are located at the Muñíz Airbase. He suffered multiple contusions, a wound in his forehead and fractured a rib. The decedent bled profusely and was taken by ambulance to the Carolina Regional Hospital. After several tests, x-rays and being stabilized, he was discharged. Several days later his condition deteriorated and he was taken to the Emergency Room of Pavía Hospital where he was diagnosed with a subdural hematoma. There he underwent surgery but died on June 25, 2000.

The plaintiffs assert that the wounds, contusions, and hematoma were all the result of the accident sustained on April 13 because of the dangerous conditions of the stairs leading up to the UPS office. Moreover, the plaintiffs claim that the defendant violated its duty to provide a safe access for its clients and invitees because the stairs in question were too narrow, steep, with no handrails and failed to comply with other applicable construction codes and regulations. In short, they allege that these defects were the proximate cause of the accident suffered by Mr. Ri-

gual Camacho. See, Complaint, docket entry # 1. Defendant denies the allegations of liability and claims that it is Caribbean Airport Facilities, Inc. (CAF), the owner-lessor of the building wherein the accident occurred, who is liable in this case.

On May 31, 2001 the defendants filed their motion for summary judgment. The same went unopposed. On November 30, 2001 we entered an opinion and order granting the defendants' motion for summary judgment. (Docket entry # 30). Accordingly, judgment was entered dismissing the action with prejudice. (Docket entry # 31). On December 5, 2001 the plaintiffs requested reconsideration of the judgment arguing that they had never been served with the motion for summary judgment. (Docket entry # 19). Although the defendants opposed arguing that they had served the motion upon the plaintiffs, on December 20, 2001, we granted the motion for reconsideration. Consequently, our judgment was vacated and set aside and the plaintiffs were ordered to file their opposition to the motion for summary judgment. (Docket entry # 21). The plaintiffs opposed and the defendants replied. (Docket entries # 22 & 27).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, answers to the interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Fed. R.Cv.P.; *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–61 (1st Cir.2000); *Borschow Hospital & Medical Supplies, Inc. v. Cesar Castillo, Inc.,* 96 F.3d 10, 13 (1st Cir. 1996). A genuine issue will exist only if a material conflict in the evidence warrants trial because the disputed fact has the potential of changing the outcome of the suit under the governing law. See,

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995); *Martínez v. Colón*, 54 F.3d 980, 983 (1st Cir. 1995); *Morris v. Government Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993) (*cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994)).

The initial burden of showing "the absence of a genuine issue concerning any material fact" falls on the party moving for summary judgment. See, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997). If said burden is established, then the nonmoving party is required to show that summary judgment is inappropriate. When considering a motion for summary judgment, the court reviews the record in the light most favorable to the nonmoving party and indulges all inferences favorable to that party but pays no heed to conclusory allegations. See, *Celotex v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fernándes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 577 (1st Cir.1999); *McCarthy*, at 315; *Byrd v. Ronayne*, 61 F.3d 1026, 1030 (1st Cir.1995); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). This is so because, the nonmoving party cannot avoid summary judgment by "simply show[ing] there is some metaphysical doubt as to the material facts." See, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994). Neither can it rest

upon "improbable inferences, and unsupported speculation" nor "rest upon mere allegation or denials of his pleading". *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir.1995), *cert. denied* 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir.1990).

First of all, it clearly stems from the lease contract between UPS and CAF that the stairs where the accident occurred were constructed by CAF. See, ¶ 1(a) of the Office Facility Lease between Caribbean Airport Facilities, Inc., Exhibit 1, Motion for Summary Judgment, docket entry # 14. Therefore, the plaintiffs' claim that UPS was negligent because the stairs failed to comply with the applicable construction codes and regulations is without merit.

■ The crux of this case is whether UPS had a duty toward the decedent to maintain the stairs where the accident occurred in good conditions and to warn the clients of any hazards. To prevail on a negligence theory, a plaintiff must establish: (1) a duty requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) proof of damage; and (4) a causal connection between the damage and the tortious conduct. See, *Woods–Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 124 F.3d 47, 50–51 (1st Cir.1997). The defendant argues that such a duty does not exist because the stairs are under the control of CAF, the owner-landlord. On the contrary, the plaintiffs assert that, though CAF is liable under Article 1444 of the Puerto Rico Civil Code, 31 L.P.R.A. § 4051(2) [1], UPS is also

**1.** Article 1444 provides in its pertinent part that the lessor is obliged:

(1) . . .

responsible because by operating an office in the building it invited the public to come to it and forced them to use defective and dangerous stairs as access to its premises. The plaintiffs rely on the duty announced by the Puerto Rico Supreme Court in *Gutierrez v. Bahr*, 78 P.R.R. 451, 452, 1955 WL 11572 (1955), that "when a person or an enterprise maintains a public place of business for the purpose of transacting business in the premises for his or its own benefit, he or it is bound to maintain it in such safe a condition that one who is induced to enter the premises will not suffer any damage."

■ This doctrine must be put in its proper perspective. It is hornbook law that the owner of a business is not an insurer of the safety of the business visitors. That is, there is no absolute liability for the injuries suffered by a patron. Liability will only lie if it is established, by the preponderance of the evidence, that a dangerous condition existed **INSIDE** of the store or office and that said condition was known or forseeable by the owner of the establishment. (Our emphasis). See, *Colón González v. K–Mart*, — D.P.R. — (2001), 2001 J.T.S. 98, p. 1483, 2001 WL 755459; *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 650 (1985). The cases cited by the plaintiffs to sustain their theory that UPS is liable in this case involve accidents which occurred inside of the business establishment. See, *Cotto v. C.M. Ins. Co.*, *supra; Maldonado v. Interamerican University*, 104 D.P.R. 420 (1975); *Aponte v. Meléndez*, 87 P.R.R. 619, 1963 WL 14976 (1963); *Goose v. Hilton*, 79 P.R.R. 494, 500, 1956 WL 12921 (1956); *Gutierrez v. Bahr, supra; Prado v. Quiñones*, 78 P.R.R. 309, 325–26, 1955 WL 11589 (1955).

(2) To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purposes to which it was destined.

Under such a scenario, a tenant has also been held liable because it retained control over the accident site. See, *Dopico–Fernández v. Grand Union Supermarket*, 841 F.2d 11, 15 (1st Cir.1988) *cert. denied* 488 U.S. 864, 109 S.Ct. 164, 102 L.Ed.2d 135; *Cotto v. C.M. Insurance Co., supra; Maldonado v. Interamerican University*, 104 D.P.R. at 426.

■ However, the accident in the case of caption occurred in an area outside of UPS' office. It is undisputed that UPS counter where the decedent went to pick up a package the day of the accident is located on the first floor the building. The same is accessed by ascending an exterior stairway of approximately five steps and crossing a lobby area. It was in that stairway where decedent Rigual Camacho. These stairs are the "common entrance to the building", which is owned by CAF, who is also one of the occupants of the building. See, Proposed Uncontested Fact # 1, 3 & 4, Joint Memorandum to the Court in compliance with Initial Scheduling Conference Order, docket entry # 10, p. 3. "UPS is one of several lessees" in said building. See, Proposed Uncontested Fact # 2, *supra.* Swissport, American Eagle and Virgin Island are among the other occupants of the building. See, Floor Plan of the Lease Agreement, Attachment A of Exhibit 1, Motion for Summary Judgment, docket entry # 14. Even accepting the plaintiffs' argument that the only occupants of the building are UPS, CAF and Swissport, it remains undisputed that the stairs where the accident occurred are not located inside of UPS' office. On the contrary, the stair is located in an area of common use to give public access to the building

(3) ...

(4) ....

and obviously to all the business establishments therein located.

The Puerto Rico Supreme Court has established that "[w]hen a building consists of several apartments or rooms and they are leased to different tenants, the entrances, foyers, staircases and halls of common use are, except when otherwise provided, in the possession and under the control of the landlord, and, consequently, the responsibility for their conditions and safety rests in the latter". *Santaella v. Licari,* 83 P.R.R. 855, 860, 1961 WL 13758 (1961). The landlord retains a duty to keep in reasonably safe condition those portions of the building, such as halls, approaches, and stairways, that remain under his control. See, *Torres v. Fernández,* 56 P.R.R. 459, 470 (1956). Following the Puerto Rico Supreme Court's holdings in these cases, the U.S. Court of Appeals for the First Circuit held in a case where the accident occurred in a sidewalk used in common with other lessees, that a tenant does not have a duty to secure the safety of persons outside its establishment when it has not retained control of said area. See, *Dopico–Fernández v. Grand Union Supermarket, supra.*

It stems from the lease contract between UPS and CAF that the latter was the one responsible for providing pedestrian access from the demised property used by UPS to the outside of the building and the parking area. As previously pointed out, the pedestrian access, namely the stairway in question in this case, was constructed by CAF. See, Office Facility Lease between Caribbean Airport Facilities, Inc., Exhibit 1, Motion for Summary Judgment, docket entry # 14. In addition, according to the Schedule A of the lease contract, CAF was the one responsible, on a daily basis, of sweeping all steps, side walks and exterior landings leading to the buildings. Likewise, it was responsible for

sweeping all stair areas on a weekly basis. See, Schedule A of the Office Facility Lease between Caribbean Airport Facilities, Inc., *supra.*

Furthermore, Clause 8 of the contract specifically provides that:

"during all terms of this Lease Landlord **shall** maintain and repair the Demised Premises and all machinery and fixtures therein, the Building,.... **All repairs and maintenance shall** be at **Landlord's risk and expense.** If Landlord shall fail to start any work required to be done by Landlord under this Section... **then Tenant may** make such repairs for the account of Landlord and the cost thereof shall be deducted from the next monthly installments of rent payable hereunder." (Our emphasis).

Clause 17 also states that if the Landlord fails to comply with one of his duties under the contract, "Tenant may,..., be entitled to perform on behalf of Landlord and deduct from the rent any expenses thereby incurred...". Contrary to the plaintiffs' interpretation of these two clauses, the fact that the tenant may make such repairs cannot be read as imposing an obligation upon the tenant. The use of the word "shall" in reference to the Landlord, in contrast with the word "may" in reference to the Tenant, clearly denotes that the one responsible for the repairs is CAF. In view of all of the above, the stairs where the accident occurred were under the control of CAF and not of the defendant.

In conclusion, we find no basis for imposing upon UPS any duty to keep the stairs in reasonably safe conditions or to warn the patrons of any hazardous condition. In other words, there is no evidence on the record that the damages suffered by the plaintiffs' father were proximately caused by any act or omission of the defendant. See, Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 ("[a] person

who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damages so done."). See also, *Colón González v. K–Mart, supra,* pp. 1482–3 (The three essential requirements of a tort action under Article 1802 are actual damages, causal nexus between the damage and the act or omission of another and that said act or omission was negligent or at fault.); *Toro Aponte v. E.L.A.,* 142 D.P.R. 464, 97 J.T.S. 18, p. 623, 1997 WL 90942 (1997).

**WHEREFORE,** for the reasons herein stated, defendants' motion for summary judgment is **GRANTED.** Accordingly, this action is **DISMISSED WITH PREJUDICE.** Judgment shall be entered.

**SO ORDERED.**

### JUDGMENT

Pursuant to the Opinion and Order of even date, **GRANTING** the defendants' motion for summary judgment, this action is **DISMISSED WITH PREJUDICE.** Judgment is hereby entered accordingly.

**SO ADJUDGED.**